UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLOYD SCOTT,<br><br>              Plaintiff,<br><br>     v.<br><br>ADVENTIST HEALTH BAKERSFIELD,<br>et al.,<br><br>              Defendants. | Case No.: 1:22-cv-01334-KES-CDB<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS THIS ACTION FOR PLAINTIFF'S FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**<br><br>(Doc. 10)<br><br>**14-DAY OBJECTION DEADLINE** |

Plaintiff Floyd Scott is proceeding pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

## I.     INTRODUCTION

Plaintiff filed his original complaint on October 19, 2022. (Doc. 1.)

On November 29, 2022, the Court issued its First Screening Order. (Doc. 4.) On December 14, 2022, Plaintiff filed a first amended complaint. (Doc. 7.)

Following issuance of this Court's Second Screening Order on February 15, 2024 (Doc. 9), Plaintiff filed his second amended complaint on March 1, 2024 (Doc. 10).

## II.     SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

1    The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious,

2    fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant

3    who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if

4    it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal

5    theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

6        **III.    PLEADING REQUIREMENTS**

7            **A.  Federal Rule of Civil Procedure 8(a)**

8            "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited

9    exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain

10   "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R.

11   Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the

12   plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal

13   quotation marks & citation omitted).

14           Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a

15   cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556

16   U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must

17   set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"

18   *Id*. (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal

19   conclusions are not. *Id*. (citing *Twombly*, 550 U.S. at 555).

20           The Court construes pleadings of pro se prisoners liberally and affords them the benefit of

21   any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the

22   liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal

23   theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation

24   of a civil rights complaint may not supply essential elements of the claim that were not initially

25   pled," *Bruns v. Nat'l Credit Union Admin*., 122 F.3d 1251, 1257 (9th Cir. 1997) (internal

26   quotation marks & citation omitted), and courts "are not required to indulge unwarranted

27   inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation

28   marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not

2

1   sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's

2   liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

### B.  Linkage and Causation

4   Section 1983 provides a cause of action for the violation of constitutional or other federal

5   rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under

6   section 1983, a plaintiff must show a causal connection or link between the actions of the

7   defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*,

8   423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the

9   deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative

10   act, participates in another's affirmative acts, or omits to perform an act which he is legal required

11   to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740,

12   743 (9th Cir. 1978) (citation omitted).

### C.  Supervisory Liability

14   Liability may not be imposed on supervisory personnel for the actions or omissions of

15   their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g.,*

16   *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to

17   adduce evidence the named supervisory defendants "themselves acted or failed to act

18   unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v.*

19   *C'nty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934

20   (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section

21   1983 there must be a showing of personal participation in the alleged rights deprivation: there is

22   no respondeat superior liability under section 1983").

23   Supervisors may be held liable only if they "participated in or directed the violations, or

24   knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th

25   Cir. 1989). "The requisite causal connection may be established when an official sets in motion a

26   'series of acts by others which the actor knows or reasonably should know would cause others to

27   inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).  Accord

28   *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on

1    inaction in the training and supervision of subordinates).

2         Supervisory liability may also exist without any personal participation if the official

3    implemented "a policy so deficient that the policy itself is a repudiation of the constitutional

4    rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942

5    F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other*

6    *grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

7         To prove liability for an action or policy, the plaintiff "must ... demonstrate that his

8    deprivation resulted from an official policy or custom established by a ... policymaker possessed

9    with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d

10   707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between

11   such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v.*

12   *Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the

13   involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v.*

14   *Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

15       **IV.    DISCUSSION**

16            **A.  Plaintiff's Second Amended Complaint**

17        Plaintiff's second amended complaint names the following entities or individuals as

18   defendants in this action:

19            Adventist Health Bakersfield

20            John Doe, Wheelchair Attendant

21            Kathleen L. Thomas, RN

22            David Reed Condie, MD

23            Gallagher Bassett

24            Christina Dietrich

25            Gwen Arroyo, SCLA

26            The Compass Group

27            National Union Insurance Company of Pittsburg

28            Timothy Miller, RN

(Doc. 10 at 2-6.) Plaintiff seeks $5,000,000 in damages. (*Id*. at 16.)

**A. Claim 1 - Statement of the Claim**

Plaintiff contends that on January 15, 2021, while wearing orange prison clothing, waist chains with handcuffs, and leg chains with ankle cuffs, Plaintiff was transported to Adventist Health Bakersfield ("AHB"), a contracted medical facility of the California Department of Corrections and Rehabilitation ("CDCR") and California State Prison-Los Angeles County ("CSP-LAC"). (Doc. 10 at 10-11.) Plaintiff states "per AHB's Policy for prisoner transport within the AHB Facility," he was taken to a basement "waiting room for prisoners" to await his appointment. (*Id*. at 11.) An AHB employee arrived with a wheelchair to take Plaintiff to his appointment. (*Id*.) Plaintiff states the AHB employee "was acting (1) at a public function; (2) joint action; (3) government compulsion or coercion, and (4) governmental nexus when the AHB Employed Wheelchair Attendant took over custody" of Plaintiff pursuant to AHB's policy. (*Id*.) That policy "does not want prisoners freely walking in their Facility even though the Prison Custody Staff with weapons were present." (*Id*.) In an examination room, Plaintiff was instructed by the attendant to get up from the wheelchair. (*Id*.) However, once Plaintiff attempted to get up, the leg chains caught on the wheelchair's footrest, and he "fell face forward because for some reason the wheelchair attendant did not set the wheelchairs brakes or assist the Plaintiff up safety out of the wheelchair." (*Id*.) Plaintiff hit his knees on the concrete floor and injured his left knee. (*Id*.) Correctional Officer Venezuela and the attendant picked Plaintiff up off the floor and carried him to the bed in the examination room. (*Id*.) Plaintiff states: "Ordinary care would have had the Wheelchair Attendant to secure the Wheelchairs wheels by using the locks then assisting the patient up safely …." (*Id*.) Plaintiff asserts he has suffered a "life long knee injury" caused by the attendant. (*Id*.) Plaintiff alleges the attendant did not treat Plaintiff "as he would have a private citizen especially an 63 year old who could not freely move about." (*Id*.) Further, Plaintiff contends the attendant was deliberately indifferent to Plaintiff "just because of his status as" an inmate. (*Id*.)

Next, Plaintiff alleges he advised Defendant Thomas that he was in pain and showed Thomas the injury to his left knee "which clearly showed a dent and a knot on the left knee cap."

(Doc. 10 at 11.) Plaintiff contends Thomas failed to treat his injury or to provide ice or pain medication. (*Id*.) He alleges Thomas was "[i]ndifferent to the [his pain] and knee injury," and that an ordinary provider would have "at the very least given the Plaintiff a pain pill, ace bandage or something to help with the pain." (*Id*.) Plaintiff asserts if he had been a private citizen he would have been treated differently and notes another patient in the examination room received Thomas' full attention. (*Id*.)

Plaintiff contends AHB's emergency response team arrived and Defendant Condie checked for a concussion, but Plaintiff never complained of a head injury. (Doc. 10 at 11.) Plaintiff advised Condie he was in pain and "showed Condie the left knee for which clearly showed the dent and the knot on his left knee cap." (*Id*.) Plaintiff alleges Condie failed to treat his injury and did not provide ice or pain medication, nor did the doctor order an x-ray or MRI. (*Id.* at 11-12.) Plaintiff contends Condie was deliberately indifferent to his injury and pain "that was fresh at the time on January 15, 2021." Plaintiff asserts that Condie, as a medical doctor, should be trained to handle a knee injury but did not provide the ordinary care one expects from a medical professional. (*Id.*)

Plaintiff maintains a prison transport officer "had to tell" Defendant Thomas "to make out an incident report," but Plaintiff has never seen such a report. (Doc. 10 at 12.) Plaintiff states neither Defendant Condie nor the wheelchair attendant made an incident report. (*Id*.)

Plaintiff asserts the inaction of AHB's employees—the wheelchair attendant, Thomas and Condie— "shows a prejudice towards the Plaintiff who was in Prison clothing." (Doc. 10 at 12.) He contends they were deliberately indifferent to his pain and knee injury and that it "shocks the conscience" when medical professionals "fail to do ordinary Medical Care just because." (*Id*.) He states he "showed" Thomas and Condie "the knot and dent on his left knee" and "showed a serious medical need for treatment." (*Id*.) Plaintiff contends Defendants Condie and Thomas' failures violate the Eighth Amendment. (*Id*.) Plaintiff suffered a serious injury "and his condition is now a life long of further pain and suffering." (*Id*.) Plaintiff asserts that if AHB had a policy allowing him to walk to his appointment, he would not have "fell out of the wheelchair." (*Id*.)

Plaintiff further contends that upon his return to CSP-LAC, medical staff "took action" and later x-rays and an MRI show an injury to his left knee.[1] (Doc. 10 at 12.) Plaintiff received physical therapy for the injury, wears a knee brace and was "told by several Doctors that his knee pain is for life." (*Id*.) Plaintiff contends that because the AHB staff "did nothing to treat" his injury "knowing that an elderly person falling on a concrete floor and ended up with a knot and a dent … shows a substantial risk of serious harm and Dr. Condie and R.N. Thomas failed to take reasonable measures to abate" his injury and pain. (*Id*.) He alleges their "inaction shows a purposeful act or failure to respond." (*Id*.) Plaintiff asserts the injury he sustained on January 15, 2021, was visible then and is "still visible to see now." (*Id*.) Plaintiff concludes that had it not been for AHB's policy and the deliberate indifference of AHB staff he would not have fallen from the wheelchair. (*Id*.)

**B.  Claim 2 - Statement of Claim**

Plaintiff states "Claim 2 is for a Due Process Rights Violation(s); Failure to Act with Good Faith; and their Policies to Place Inmates out of view and in Wheelchairs to be escorted to their Medical Appointments." (Doc. 10 at 13.)

Plaintiff asserts his claim is against Defendant AHB and their parent company, Defendant The Compass Group, who contract with CDCR and CSP-LAC. (Doc. 10 at 13.) He contends AHB handles "several types" of medical appointments and treatments for state prisoners. (*Id*.) Pursuant to AHB policy, Plaintiff states he was placed in a wheelchair while waiting to be seen on January 15, 2021. (*Id*.) He was in "orange prison clothing" and waist and leg chains and cuffed at the hands and ankles. (*Id*.) Plaintiff contends it is AHB's policy that inmates are placed in wheelchairs and wait in the basement by the morgue, and are escorted via wheelchair to their appointment accompanied by an AHB employee. (*Id*.) He asserts this "policy does not go for private citizens its for prisoners." (*Id*.) Plaintiff alleges he was injured as a result of AHB's policy when its employee failed to lock the wheels on the wheelchair, causing Plaintiff to fall and suffer an injury to his left knee. (*Id*.) Plaintiff notes he "walked into AHB all the way to the basement escorted by two fully armed Prison Transportation Officers without incident of a fall." (*Id*.) He

---

[1] The type of injury alleged is unspecified.

7

1    contends AHB's policy is "flawed because it is only for prison inmates and not private citizens."

2    (*Id*.)

3         Plaintiff asserts he has had other medical appointments at medical facilities who contract

4    with CDCR. (Doc. 10 at 13.) Plaintiff notes a hospital in Oceanside has a similar wheelchair

5    policy, but the escort is provided by prison staff who "treat the prisoners better without causing

6    injury." (*Id*.) Other medical facilities allow prisoners to walk to the appointment escorted by "two

7    fully armed" prison staff persons. (*Id*.) Plaintiff contends ABH's policy is flawed because it

8    "show[s] that they have different rules and or a policy for prison inmates and not for private

9    citizens" and "discontent towards prisoners 'We will treat them because we have to by law' but

10   we don't want them seen by our other patients." (*Id*.) Plaintiff asserts the contract between

11   CDCR, CSP-LAC and AHB placed it "in a nexus acting as a State Actor, namely (1) public

12   [function]; (2) joint action; (3) government compulsion or coercion, and (4) government nexus as

13   on January 15, 2021 AHB was attached to CDCR and CSP-LAC to provide" him with medical

14   care. (*Id*.) Plaintiff asserts after his fall and injury he was provided with no medical care, contrary

15   to the care that would have been provided to a private citizen. (*Id*.) Plaintiff asserts "[h]ad it not

16   been for AHB's flawed policies" he would not have suffered "a life long knee injury." (*Id*. at 13-

17   14.)

18        Plaintiff contends after his injury and return to CSP-LAC, he contacted AHB several

19   times to get the name of the wheelchair attendant. (Doc. 10 at 14.) Stating he must exhaust his

20   administrative remedies prior to file suit, Plaintiff contends that by not providing the wheelchair

21   attendant's name "AHB impeded [his] attempts to exhaust" those remedies. (*Id*.) He states:

22   "Because the Plaintiff needed the correct name of the person who caused his knee injury by

23   failing to provide the Plaintiff with the wheelchair attendants name caused delays in trying to

24   learn the wheelchair attendants name to properly serve him in any Civil Action or any complaint

25   with AHB and its Insurance Company Provider Gallagher Bassett." (*Id*.) Both AHB and

26   Defendant Gallagher Bassett failed to comply with his requests. (*Id*.) Plaintiff contends Defendant

27   Arroyo and Dietrich failed to respond to his numerous attempts to file an insurance claim for his

28   injury. (*Id*.) He asserts Gallagher Bassett sent him a letter on July 26, 2021 requesting he send

them medical records for the two-year period prior to January 15, 2021. (*Id*.) Plaintiff did so. (*Id*.) But Gallagher Bassett "did not respond back to [his] request to file for an insurance claim for his left knee injury." (*Id*.) Therefore, Plaintiff contends Gallagher Bassett impeded his ability to exhaust his administrative remedies and to file an insurance claim. (*Id*.) He alleges Gallagher Bassett did so in an effort to allow the two-year statute of limitation period to expire. (*Id*.) Plaintiff contends these actions are also a violation of the "Sixth Amendment" relating to "meaningful access to the Courts when they intentionally ignored" his attempts to exhaust his administrative remedies. (*Id*.) Further, Plaintiff contends that had he been a private citizen, Gallagher Bassett would have provided him with the documents he requested in order to file a personal injury claim. (*Id*.)

Plaintiff contends AHB, Gallagher Bassett, Arroyo, Dietrich and Defendant National Union Insurance Company "devised a Scheme or Policy to cause delays in the Plaintiff's Due Process Rights to Legally file an Insurance Claim for his person injury … knowing that California has a two year tolling to file claims for personal injury." (Doc. 10 at 14-15.) Next, Plaintiff asserts he also contacted "Timothy Miller, R.N. the AHB person from the Office of Risk Management several times in an attempt to exhaust" his administrative remedies. (*Id*. at 15.) Defendant Miller failed to provide Plaintiff with the wheelchair attendant's name despite having "access to all of AHB's [e]mployees." (*Id*.) This too is a scheme or policy "to deny" Plaintiff the documents he requested. (*Id*.) Plaintiff states Miller's position is "the same as if he was a PRISON Appeal Coordinator he owed the Plaintiff his Due Process Rights …." (*Id*.) Plaintiff contends he would have been treated differently had he been a private citizen. (*Id*.) He asserts this is also a violation of his "Sixth Amendment Meaningful Access to the Courts." (*Id*.) Plaintiff contends he attempted to file a timely insurance claim but his actions "were impeded by AHB, Gallagher Bassett and their employees and the Nation[al] Union Insurance Company of Pittsburg." (*Id*.) He further contends their actions violated his Eighth Amendment rights to be free from pain and suffering. (*Id*. at 17.)

### C.  Consideration of Plaintiff's Claims

The Court will first address Plaintiff's "Claim 1" asserting Eighth Amendment deliberate

indifference to serious medical needs claims against Defendants AHB, John Doe, Thomas, and Condie. Thereafter, it will address Plaintiff's "Claim 2" against Defendants AHB, Gallagher Bassett, Compass Group, National Union Insurance Company of Pittsburg, Arroyo, Dietrich and Miller under the constitutional provisions identified by Plaintiff.

## Claim 1: Defendants AHB, Doe, Thomas & Condie

*Applicable Legal Standards*

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in '"significant injury or the unnecessary and wanton infliction of pain."'" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096 (quotation marks omitted)).

As to the first prong, indications of a serious medical need "include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation & internal quotation marks omitted); accord *Wilhelm*, 680 F.3d at 1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) ("Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain").

As to the second prong, deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096 (citing *McGuckin*, 974 F.2d at 1060).

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

To prevail on a deliberate-indifference claim, a plaintiff must also show that harm resulted from a defendant's wrongful conduct. *Wilhelm*, 680 F.3d at 1122; *see Jett*, 439 F.3d at 1096; *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (prisoner alleging deliberate indifference based on delay in treatment must show delay led to further injury).

"A private physician or hospital that contracts with a public prison system to provide treatment for inmates performs a public function and acts under color of law for purposes of § 1983." *George v. Sonoma Cnty. Sheriff's Dep't,* 732 F. Supp. 2d 922, 934 (N.D. Cal. 2010) (citing *West v. Atkins*, 487 U.S. 42, 56 n. 15 (1988); *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir.1991)). In order to state a claim against private entities who have performed a public function and have acted under color of law for purposes of Section 1983, Plaintiff must allege

facts demonstrating that his constitutional rights were violated based upon a "policy, decision, or custom promulgated or endorsed by the private entity." *George*, 732 F. Supp. 2d at 940; *see Rodriguez v. Plymouth Ambulance Serv*., 577 F.3d 816, 822 (7th Cir. 2009) (stating that, "like a municipality, a private corporation can be liable if the injury alleged is the result of a policy or practice, or liability can be demonstrated indirectly by showing a series of bad acts and inviting the court to infer from them that the policy-making level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned the misconduct of subordinate officers"); *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) (to state an official capacity claim under section 1983, a plaintiff must allege that the official was acting pursuant to a policy or custom).

*Analysis*

Initially, the Court finds Plaintiff has plausibly alleged AHB, Doe, Thomas and Condie, although a private hospital and its employees, acted under color of law for purposes of the claims Plaintiff asserts because AHB is alleged to have contracted with CDCR to provide treatment for state prisoners, and CSP-LAC inmates in particular. *George*, 732 F. Supp. 2d at 934.

As concerns AHB, liberally construing the second amended complaint, Plaintiff fails to state a claim upon which relief can be granted. Plaintiff contends AHB's wheelchair escort policy for inmates caused the violation of his Eighth Amendment rights. That policy calls for inmates who are treated at AHB to be transported within the facility via wheelchair. The policy itself is not violative of Plaintiff's Eighth Amendment rights and this Court has not identified any legal authority finding a policy such as that ascribed to AHB to be unconstitutional. Where the policy relied upon is not itself unconstitutional, something more "than the single incident will be necessary ... to establish both the requisite fault on the part of the municipality and the causal connection between the 'policy' and the constitutional deprivation." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

Under this authority, Plaintiff cannot state a cause of action premised on a medical providers' wheelchair transport policy that cannot on any gloss of Plaintiffs' allegations be deemed unconstitutional.  "[P]roof of a single incident of unconstitutional activity," or even a

series of "isolated or sporadic incidents," will not give rise to liability under § 1983." *Gant v. County of Los Angeles*, 772 F.3d 608, 618 (9th Cir. 2014) (citation omitted); *see Phan v. Olive Crest*, No. SA CV 22-01245-SB (PLA), 2022 WL 17162579, at *7 (C.D. Cal. Nov. 2, 2022) ("plaintiff's claim arises from one or perhaps a few incidents when plaintiff's visits with his child were interrupted," but such "isolated or sporadic incidents" "cannot give rise to a claim against" a private party even assuming it was acting on behalf of the County; recommending dismissal for failure to state a claim), recommendation adopted, 2022 WL 17155761 (C.D. Cal. Nov. 22, 2022), affirmed on appeal 2023 WL 6875420 (9th Cir. Oct. 18, 2023). Instead, liability must be "founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Here, Plaintiff alleges a single incident arising from AHB's wheelchair escort policy and therefore fails to state a claim. *Gant*, 772 F.3d at 618.

As to Doe, Thomas, and Condie, liberally construing the second amended complaint, Plaintiff plausibly meets the first prong of the deliberate indifference test by alleging the existence of an injury—lifelong knee pain—that a reasonable doctor would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects his daily activities, or the existence of chronic and substantial pain. *Colwell*, 763 F.3d at 1066. However, even liberally construing the second amended complaint, Plaintiff fails to meet the second prong of the relevant test.

First, as to Defendant Doe, the facts allege nothing more than negligence. Plaintiff asserts that "for some reason," Doe did not use and set the brakes on the wheelchair and did not assist him out of the wheelchair.  Neither these nor other facts alleged demonstrate Doe knew of and disregarded a substantial risk of harm to Plaintiff as it relates to AHB's policy or Doe's direction that Plaintiff stand from the wheelchair.  *See, e.g.*, *Leonard v. Parkland Hospital X-Rays Staff Member*, No. 3:20-cv-00328-C (BT), 2020 WL 8263315, at *3 (N.D. Tex. Dec. 31, 2020) (where plaintiff fell to floor during medical appointment at hospital, allegation that hospital's x-ray tech should have sought assistance from another staff member before transferring him from one wheelchair to another "fails to rise to the level of deliberate indifference" and amounts only to

1    "negligence or a disagreement with treatment"); *Poe v. CDCR*, No. 1:12cv01691 DLB PC, 2013

2    WL 1737022, at *3 (E.D. Cal. Apr. 22, 2013) ("Plaintiff argues that MCH and Defendant Holguin

3    should have transported her to the van, after discharge, in a wheelchair. She also contends that

4    Defendants CDCR and Warden Johnson are at fault for not ensuring that such a policy was in

5    place. These claims, however, do not rise to the level of deliberate indifference. Although

6    Plaintiff may not have been provided with a wheelchair on her way to the van, there is no

7    indication that Defendants knew of, and disregarded, a substantial risk of harm. At most,

8    Defendants' actions constitute negligence, and even gross negligence does not support a violation

9    of the Eighth Amendment"). And Plaintiff's assertion that Doe's actions or inaction was due to

10   his status as an inmate is vague and conclusory. *Iqbal*, 556 U.S. at 678.

11        Second, as to Defendants Thomas and Condie, the facts alleged do not establish a state of

12   mind more blameworthy than negligence. In fact, Plaintiff asserts these individuals didn't act with

13   "ordinary care." But deliberate indifference "requires 'more than ordinary lack of due care for the

14   prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835; *Johnson v. Lee*, No. 3:17-cv-00095-

15   CAB-BLM, 2017 WL 2598790, at *5 (S.D. Cal. June 15, 2017) (regarding contracted dental

16   providers and claim of deliberate indifference, "acts or omissions must entail more than [plaintiff]

17   has alleged here—an isolated act of alleged negligence and/or lack of due care"). No facts

18   indicate Thomas and Condie were aware a substantial risk of serious harm to Plaintiff existed or

19   that Thomas and Condie drew that inference. *Toguchi*, 371 F.3d at 1060. As alleged, the denials

20   of pain medication, ice or bandages, or further testing for a "dent" and "knot" on Plaintiff's left

21   knee amount to nothing more than negligence. "[A] complaint that a physician has been negligent

22   in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment

23   under the Eighth Amendment. Medical malpractice does not become a constitutional violation

24   merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *Anderson v. County of Kern*, 45

25   F.3d 1310, 1316 (9th Cir. 1995) (same). Even gross negligence is insufficient to establish

26   deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334

27   (9th Cir. 1990).

28        Defendants Thomas and Condie examined Plaintiff after his fall. Plaintiff's allegations

14

amount to nothing more than a disagreement with the diagnosis or treatment offered and do not support a claim of deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *see Mays v. Gorman*, No. 1:11-cv-694, 2011 WL 3739044, at *6 (W.D. Mich. Aug. 24, 2011) (finding plaintiff failed to state a claim where he complained defendant "did not treat the lump on his head or order an x-ray or CT scan" because his complaint lacked "allegations that would suggest that he either faced a substantial risk of serious harm or that [defendant] was deliberately indifferent to that risk. Instead, he appears only to disagree with [defendant's] decision not to order further testing without identifying any symptoms warranting such testing").

To the extent Plaintiff alleges Defendants Thomas and Condie failed to provide adequate medical care pursuant to an AHB policy to treat inmate patients differently than other patients or were "prejudiced towards" him because he wore "[p]rison clothing," these factual assertions are vague and conclusory and otherwise only amount to legal conclusions the Court is not required to accept. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 (the Court need not accept as true "a legal conclusion couched as a factual allegation"); *Neitzke*, 490 U.S. at 330 n.9.

In sum, Plaintiff fails to allege a cognizable Eighth Amendment claim against Defendants AHB, Doe, Thomas or Condie. Moreover, the Court finds granting Plaintiff further leave to amend would be futile as Plaintiff has been provided previous opportunities to cure the deficiencies identified in his complaints and has been unable to do so. *Hartmann v. CDCR*, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile").

### Claim 2: Defendants AHB & Related Insurance Defendants

*Applicable Legal Standards: Due Process*

The Fourteenth Amendment protects persons from deprivations of life, liberty, or property without due process of law. U.S. Const. amend. XIV. The Due Process Clause "protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). When a protected interest is implicated, the Due Process Clause provides certain procedural guarantees. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). The

1   amount of process or specific procedures required vary by context and the particular interest at

2   stake. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

3   "[T]he due process guarantee does not entail a body of constitutional law imposing

4   liability whenever someone cloaked with state authority causes harm." *County of Sacramento v.*

5   *Lewis*, 523 U.S. 833, 848 (1998). "It is well established that negligent conduct is ordinarily not

6   enough to state a claim alleging a denial of liberty or property under the Fourteenth Amendment."

7   *See Doe v. Beard*, No. EDCV 13-02262 DDP (SPx), 2014 WL 3507196, *6 (C.D. Cal. July 14,

8   2014) (citing *Daniels v. Williams*, 474 U.S. 327, 330 (1986))*; Davidson v. Cannon*, 474 U.S. 344,

9   347-48 (1986) ("[T]he Due Process Clause of the Fourteenth Amendment is not implicated by the

10  lack of due care of an official causing unintended injury to life, liberty or property. In other

11  words, where a government official is merely negligent in causing the injury, no procedure for

12  compensation is constitutionally required," whether the due process claim alleges is procedural or

13  substantive).

14  To state a procedural due process claim, a plaintiff must allege: (1) a deprivation of a

15  constitutionally protected liberty or property interest, and (2) a denial of adequate procedural

16  protections. *Kildare v. Saenz*, 325 F.3d 1078, 1085 (9th Cir. 2003). A prisoner has a liberty

17  interest protected by the Due Process Clause only where the restraint "imposes atypical and

18  significant hardship on the inmate in relation to the ordinary incidents of prison life." *Keenan v.*

19  *Hall*, 83 F.3d 1083, 1088 (9th Cir. 1996) (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)).

20  "The concept of substantive due process ... forbids the government from depriving a

21  person of life, liberty, or property in such a way that shocks the conscience or interferes with

22  rights implicit in the concept of ordered liberty." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871

23  (9th Cir.1998) (citation & internal quotation marks omitted). To establish a claim, plaintiff "must,

24  as a threshold matter, show a government deprivation of life, liberty, or property." *Action*

25  *Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007)

26  (quoting *Nunez*, 147 F.3d at 871). "The Due Process Clause takes effect only if there is a

27  deprivation of a protected interest." *Nunez*, 147 F.3d at 874.

28  / / /

16

*Analysis*

Once again, liberally construing the second amended complaint, Plaintiff fails to allege a cognizable due process claim against Defendants AHB, Gallagher Bassett, The Compass Group, National Union Insurance Company of Pittsburg, Arroyo, Dietrich or Miller.

To state a claim under § 1983, a plaintiff must allege that the deprivation of a right secured by the federal constitution or statutory law was committed by a person acting under color of state law. *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). "While generally not applicable to private parties, a § 1983 action can lie against a private party when he is a willful participant in joint action with the State or its agents." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003). The Ninth Circuit has identified four circumstances under which private persons may be involved in government action to such a degree and in such a manner that they may be deemed to be acting under color of federal or state law. First, under the "public function" test, "when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Kirtley*, 326 F.3d at 1093; *see Schowengerdt v. Gen. Dynamics Corp.*, 823 F.2d 1328, 1339 n.17 (9th Cir. 1987) ("[U]nder the 'public function' test, the Supreme Court has 'found state action present in the exercise by a private entity of powers traditionally exclusively reserved to the State'") (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974)). Second, under the "joint action" test, a court will consider whether "the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity" and "knowingly accepts the benefits derived from unconstitutional behavior." *Kirtley*, 326 F.3d at 1093; *see Schowengerdt*, 823 F.2d at 1339 n.17 ("Under the 'joint action' test, a private party is acting under color of state (or federal) law if 'he is a willful participant in joint action with the [government] or its agents'") (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)). Third, under the "governmental coercion or compulsion" test, the court considers "whether the coercive influence or 'significant encouragement' of the state effectively converts a private action into a government action." *Kirtley*, 326 F.3d at 1094; *see Broad v. Sealaska Corp.*, 85 F.3d 422, 431 (9th Cir. 1996) ("Without governmental

17

encouragement or coercion, actions taken by private corporations pursuant to federal law do not

transmute into government action"). Finally, under the "governmental nexus" test, the court asks

whether "there is such a close nexus between the State and the challenged action that the

seemingly private behavior may be fairly treated as that of the State itself." *Kirtley*, 326 F.3d at

1095 (quoting *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288,

295 (2001) (internal quotation marks omitted)).

    Plaintiff's second amended complaint does not plausibly allege any facts showing that

AHB or its insurers and employees satisfied either the "public function," "joint action,"

"governmental coercion or compulsion," or "governmental nexus" tests such that their actions can

fairly be construed to be attributable to state government. Specifically, Plaintiff has not plausibly

alleged that AHB exercises powers traditionally exclusively reserved to the State (public function

test), or that the State has placed itself into a position of interdependence with AHB such that it

must be recognized as a joint participant in the challenged activity (joint action test), or that the

State has coercive influence or has significantly encouraged AHB into government action

(government coercion or compulsion test), or that there is such a close nexus between the State

and AHB's wheelchair escort policy that it should be fairly treated as that of the State itself

(government nexus test). *Kirtley*, 326 F.3d at 1093-95. Plaintiff merely states these entities, and

their employees, are state actors for purposes of his second claim. *Bruns*, 122 F.3d at 1257 ("a

liberal interpretation of a civil rights complaint may not supply essential elements of the claim

that were not initially pled"); *Twombly*, 550 U.S. at 555 (factual allegations are accepted as true,

but legal conclusions are not); *Doe I*, 572 F.3d at 681 (courts "are not required to indulge

unwarranted inferences").

    Moreover, to the extent Plaintiff asserts a procedural due process claim, the second

amended complaint fails to state a claim upon which relief can be granted. AHB and the related

insurance defendants' failure to respond to Plaintiff's requests for additional information does not

amount to a restraint that "imposes atypical and significant hardship on the inmate in relation to

the ordinary incidents of prison life." *Keenan*, 83 F.3d 1088. As this Court previously noted,

"Plaintiff has not established that he suffered restraints outside the normal incidents of prison life.

18

1  Incarcerated persons must rely on written correspondence to submit requests or inquiries to

2  outside entities, agencies or individuals for information. That restriction is a reality of prison

3  life ….” (*See* Doc. 9 at 12 [Second Screening Order].)

4         Next, to the extent Plaintiff asserts a substantive due process claim, the second amended

5  complaint fails to state a claim upon which relief can be granted. “The protections of substantive

6  due process have for the most part been accorded to matters relating to marriage, family,

7  procreation, and the right to bodily integrity.” *Albright v. Oliver*, 510 U.S. 266, 272 (1994).

8  Substantive due process “prevents the government from engaging in conduct that ‘shocks the

9  conscience,’ or interferes with rights ‘implicit in the concept of ordered liberty.’” *United States v.*

10  *Salerno*, 481 U.S. 739, 746 (1987) (internal citations omitted). “[O]nly the most egregious official

11  conduct can be said to be ‘arbitrary in the constitutional sense,’” *Lewis*, 523 U.S. at 846 (quoting

12  *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992)), and thus government action must be such

13  that it “shocks the conscience” in order to be actionable as a substantive due process claim, *id.* at

14  846-47. However, what “shocks the conscience” differs from situation to situation. *Id.* at 850.

15         Here, despite Plaintiff's assertions that AHB and the related insurance defendants’ refusal

16  to respond to his requests for information “shocks the conscience,” the undersigned does not

17  agree. The conduct alleged is not sufficiently egregious to be arbitrary in the constitutional sense.

18  On these facts, Plaintiff has alleged nothing more than negligent conduct—not responding to

19  Plaintiff's inquiries or requests for information concerning the identify of AHB’s wheelchair

20  attendant—and such conduct is insufficient to state a claim. *Lewis*, 523 U.S. at 848; *Stribling v.*

21  *Lewis*, No. 2:18-cv-0951-KJM-EFB P, 2019 WL 3202803, at *2 (E.D. Cal. July 16, 2019)

22  (“plaintiff essentially claims that due to the government’s negligence, his personal information

23  was stolen. … Negligence, however, does not amount to a violation of a federal constitutional or

24  statutory right”); *Doe*, 2014 WL 3507196, at *6 (“It is well established that negligent conduct is

25  ordinarily not enough to state a claim alleging a denial of liberty or property under the Fourteenth

26  Amendment”); s*ee, e.g*., *Alexander v. Tangipahoa Parish Sheriff Dept*., No. 05-2423, 2006 WL

27  4017825, at *3 (E.D. La. Oct. 2, 2006) (allegations against defendants for failing to include

28  plaintiff's name on an accident report when responding to a traffic collision, preventing plaintiff

1    from making an insurance claim or bringing a civil action against the other driver involved in the

2    accident, "are allegations of garden variety tortious conduct that do not rise to the level of

3    violations of the Constitution").

4          To the extent Plaintiff references prison grievance procedures and his need to exhaust

5    administrative remedies in support of his due process claims against AHB or any of the related

6    insurance defendants, the argument is unpersuasive. Plaintiff does not a have protected liberty

7    interest in the processing his appeals, and, by extension, this Court will not find Plaintiff has a

8    protected liberty interest in AHB or any related insurance defendants' processing of his requests

9    for information concerning the identity of AHB's wheelchair attendant. *See, e.g.*, *Ramirez v.*

10   *Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.

11   1988)); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

12         In sum, Plaintiff fails to plausibly allege a Fourteenth Amendment due process claim

13   against AHB or any insurance related defendant. Moreover, granting Plaintiff leave to amend his

14   due process claims against these defendants would be futile. *Hartmann*, 707 F.3d at 1130.

15                           *Applicable Legal Standards: Access to Courts*

16         Next, Plaintiff claims a "Sixth Amendment" violation against these defendants for

17   interfering with his access to the courts. An access to courts claim arises under the First

18   Amendment. Prisoners retain the First Amendment right "to petition the government for a redress

19   of [] grievances," which includes the specific right "to meaningful access to the courts[.]" *Silva v.*

20   *Di Vittorio*, 658 F.3d 1090, 1101-02 (9th Cir. 2011) (citation omitted), abrogated on other

21   grounds as stated in *Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). The constitutional

22   right of access to the courts generally requires prison officials to ensure that prisoners have the

23   "capability of bringing contemplated challenges to sentences or conditions of confinement before

24   the courts." *Lewis v. Casey*, 518 U.S. 343, 356 (1996). To that end, depending on the

25   circumstances, prison officials may be required affirmatively to "help prisoners exercise their

26   rights" (e.g., provide reasonable access to "adequate law libraries or adequate assistance from

27   persons trained in the law"), or simply to refrain from "active interference" in prisoner litigation.

28   *Silva*, 658 F.3d at 1102 (citation omitted); *see, e.g.*, *Bounds v. Smith*, 430 U.S. 817, 828 (1977)

1   (holding "that the fundamental constitutional right of access to the courts requires prison

2   authorities to assist inmates in the preparation and filing of meaningful legal papers by providing

3   prisoners with adequate law libraries or adequate assistance from persons trained in the law")

4   (footnote omitted) (overruled in part on other grounds, *Lewis*, 518 U.S. at 354). Prison officials,

5   however, are not required to ensure access beyond "[t]he tools ... inmates need in order to attack

6   their sentences, directly or collaterally, and in order to challenge the conditions of their

7   confinement." *Lewis*, 518 U.S. at 355 ("*Bounds* does not guarantee inmates the wherewithal to

8   transform themselves into litigating engines capable of filing everything from shareholder

9   derivative actions to slip-and-fall claims.... Impairment of [such] other litigating capacity is

10  simply one of the incidental (and perfectly constitutional) consequences of conviction and

11  incarceration").

12       To state a viable denial of access claim, a prisoner must plausibly show that some official

13  misconduct (e.g., alleged inadequacies in the jail's library facilities or legal assistance program)

14  caused "actual injury" – that is, that it frustrated or is impeding plaintiff's attempt to bring a

15  nonfrivolous legal claim. *Lewis*, 518 U.S. at 348-49; *Nev. Dep't of Corr. v. Greene*, 648 F.3d

16  1014, 1018 (9th Cir. 2011) (citing *Lewis*, 518 U.S. at 349) ("'Actual injury' means 'actual

17  prejudice with respect to contemplated or existing litigation'"), cert. denied, 566 U.S. 911 (2012).

18  The plaintiff's complaint must describe the alleged underlying claim, whether anticipated or lost,

19  and show that it is "nonfrivolous" and "arguable." *See Christopher v. Harbury*, 536 U.S. 403, 415

20  (2002).

21                                          *Analysis*

22       Here, Plaintiff does not allege any prison official impeded with his attempt to bring a

23  nonfrivolous legal claim. And the undersigned will not extend the relevant authorities to

24  encompass Plaintiff's attenuated claims against AHB, Gallagher Bassett, The Compass Group,

25  National Union Insurance Company of Pittsburg, Arroyo, Dietrich or Miller, and has identified no

26  legal authority for doing so.

27       In sum, as it concerns Plaintiff's allegations in access to courts claim against AHB,

28  Gallagher Bassett, The Compass Group, National Union Insurance Company of Pittsburg,

1   Arroyo, Dietrich and Miller, Plaintiff has failed to allege any cognizable constitutional claim

2   against these defendants. Moreover, granting Plaintiff leave to amend his claims against these

3   defendants would be futile. *Hartmann*, 707 F.3d at 1130.

4              **V.       CONCLUSION AND RECOMMENDATION**

5          Based on the above, **IT IS HEREBY RECOMMENDED** that this action be dismissed,

6   without leave to amend, based on Plaintiff's failure to state a claim upon which relief can be

7   granted after being afforded multiple opportunities in the undersigned's earlier screening orders

8   to consider the relevant legal authorities and remedy identified pleading deficiencies.

9          These Findings and Recommendations will be submitted to the district judge assigned to

10  this case, pursuant to 28 U.S.C. § 636(b)(l). **Within 14 days** of the date of service of these

11  Findings and Recommendations, a party may file written objections with the Court. The

12  document should be captioned, "Objections to Magistrate Judge's Findings and

13  Recommendations." Failure to file objections within the specified time may result in waiver of

14  rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v.*

15  *Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

16  IT IS SO ORDERED.

17     Dated:   **April 18, 2024**                              _____

18                                                               UNITED STATES MAGISTRATE JUDGE